IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

FILED
03 JAN 31 PM 1:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| JUDY L. GRIFFIN, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action Number |
| vs. ) | 01-C-1170-W |
| ) | |
| DILLARD'S, INC., ) | |
| ) | |
| Defendants. ) | |

ENTERED
FEB 3 2003

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Judy Griffin ("Griffin") brings the instant suit against her employer, Defendant Dillard's Inc. ("Dillard's"), alleging that Defendant subjected her to gender and age discrimination and is therefore liable to her under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, ("Title VII"), the Age Discrimination in Employment Act, ("ADEA"), 29 U.S.C. § 621, *et seq.*, as well as under the Alabama Age Discrimination in Employment Act, ("AADEA"), Ala. Code §§ 25-1-20 through -29 (2001). Presently before the Court, ripe for consideration, is Defendant's Motion for Summary Judgment on all counts. Based on the undisputed facts, the Court concludes that Defendant's motion is due to be granted.

## I. Findings of Undisputed Facts[1]

1. Plaintiff Judy Griffin, a white 47 year-old female, began working for Mercantile Stores Company ("Gayfer's") in 1974.

2. Plaintiff worked as a salesperson in several different departments of Gayfer's. She was a "Key Associate" during that time. Plaintiff's duties included training new associates, assisting managers, and handling merchandise. Plaintiff had no management responsibilities during this time.

3. In 1998, Defendant Dillard's purchased Gayfer's.

4. In August, 1998, Plaintiff was hired by Dillard's as an Auditor/Assistant to the Operations Secretary. Her duties in this capacity included reconciling sales receipts, auditing personnel files, answering questions from associates regarding benefits, and entering data on the computer regarding personnel changes.

5. In July 1999, Plaintiff was promoted into the position of Operations Secretary. In this capacity, Plaintiff served as a liaison between management and employees at the store.

6. Plaintiff remains employed by Defendant in the position of Operations Secretary.

7. In early August 1999, Plaintiff expressed interest in a position as Dock Manager.

8. Andy Poole, the Operations Manager, was the decision-maker for the filling the Dock Manager position. Poole made several comments during this period of time indicating that a

---

[1] "The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the record. These are the 'facts' for summary judgment purposes only. They may not be the actual facts. See Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1400 (11th Cir. 1994)." *Underwood v. Life Ins. Co. of Georgia*, 14 F. Supp. 2d 1266, 1267 n.1 (N.D. Ala. 1998).

woman's physical appearance mattered in her employment opportunities with Dillard's. With respect to one female, Poole commented, "God, look at that body. We have got to have her on here." Poole also commented that he favored "younger, good-looking girls."

9. In late August 1999, Poole promoted Ken Fretwell to the Dock Manager position. Fretwell is older than Plaintiff, and had worked for Dillard's for two years.

10. In explaining his selection of Fretwell, Poole commented to Plaintiff that he wanted to "take care of the men" at Dillard's.

11. In October 1999, Sherry Askew was promoted to the Dock Manager position instead of Plaintiff. Askew had some management experience with Wal-Mart; and her husband was one of Poole's friends. She is one year younger than Plaintiff.

12. In the same month, October 1999, Plaintiff was again passed over for promotion to management.

13. Tiffany Winters, a 25 year-old woman, was promoted to the position of Assistant Area Sales Manager instead of Plaintiff. Winters had a four year college degree from University of Alabama, and also had one or two years of management experience.

14. In the summer of 2000, Plaintiff again expressed an interest in being promoted to a management position.

15. At that time, Gene Heil was the District Manager of the Tuscaloosa Dillard's store. Heil was responsible for promotion decisions at that store. Heil consulted with the new store manager, Ed Bouley, in making those decisions..

16. In May 2000, Bouley approached Plaintiff and asked if she might be interested in a

promotion to upcoming management vacancies. Plaintiff told Bouley that she might be interested. Plaintiff did not express interest in any particular management position. Bouley told Plaintiff, "I will definitely consider you," and stated to Plaintiff his belief that she was qualified to hold such a position.

17. In June 2000, Plaintiff was offered a promotion to the Assistant Area Sales Manager.

18. The starting salary for the Assistant Area Sales Manager position was $27,000.00.

19. Around the same time as the position was offered to Plaintiff, it was also offered to Mike Blasi, another Dillard's employee.

20. Blasi, a 33 year-old male, had worked part-time for Dillard's. Blasi also worked for Wal-Mart as a full-time manager.

21. Dillard's promotion offer to Blasi was conditioned on his termination of the Wal-Mart employment and his full-time employment at Dillard's. Blasi's acceptance of the offer was conditioned on a starting salary of $32,000.00.

22. Blasi's management experience warrant the higher salary than the regular starting salary for the Assistant Area Sales Manager. Blasi had approximately eight years of management experience with Wal-Mart and a total of roughly twelve years of management experience.

23. Blasi accepted Dillard's condition and Dillard accepted Blasi's condition.

24. Two management positions were vacant when Blasi accepted the Assistant Area Sales manager position.

25. When Plaintiff had learned that Blasi had been offered $32,000.00 as starting salary,

she agreed to accept a management position with an identical starting salary.

26. Dillard's offered the second management position to Plaintiff, but only at its regular starting salary of $27,000.00 requested salary.

27. Plaintiff subsequently refused the offer of a promotion to a $27,000.00 management position..

28. After Plaintiff declined the position, it was awarded to Connie Holt, a 25 year-old female, at the regular starting salary of $27,000.00.

29. Like Plaintiff, Holt also had no prior management experience.

30. Griffin thereafter filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on November 15, 2000, alleging sex and age discrimination.

31. Plaintiff received her right-to-sue letter from the EEOC on February 7, 2001.

32. On May 8, 2001, Plaintiff filed this action.

### Summary Judgment Standards and the Applicable Law

On a motion for summary judgment, the Court must assess all of the evidence to ascertain whether a genuine need for trial exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is weighed heavily in favor of the non-movant; it is appropriate only if the Court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party seeking summary judgment has the initial responsibility of informing the Court of the grounds for the motion and specifically identifying those portions of the pleadings,

depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323.

Once the moving party has satisfied its initial burden of proving the non-existence of genuinely disputed issues of fact, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company,* 32 F.3d 520, 523 (11th Cir. 1994). In resolving whether a given factual dispute requires submission to a jury, a district court must view the record in the light most favorable to the nonmoving party and resolve all reasonable inferences in the nonmovant's favor. *Rooney v. Watson,* 101 F.3d 1378, 1380 (11th Cir. 1996) (citing *Hale v. Tallapoosa Co.,* 50 F.3d 1579, 1581 (11th Cir. 1995)).

Title VII makes it unlawful for a covered employer to "discriminate against any individual with respect to [her] . . . terms, conditions, or privileges of employment, because of such individual's. . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish a *prima facie* case of gender discrimination by showing the following at trial: (1) that she is a woman; (2) that she was qualified for the position; (3) that she was demoted; and (4) that she was replaced by a man.

The ADEA makes it "unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff may establish a *prima facie* case of age discrimination by direct evidence, circumstantial evidence, or statistical proof. The Eleventh Circuit has adopted the

burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Dept. of Comm. Affairs v. Burdine,* 450 U.S. 248 (1981) to evaluate ADEA claims based on circumstantial evidence. *Chapman v. AI Transport,* 229 F.3d 1012, 1024 (11th Cir. 2000).

Under this framework, the plaintiff carries the initial burden of establishing a *prima facie* case. *Combs v. Plantation Patterns,* 106 F.3d 1519, 1527-28 (11th Cir. 1997). If the plaintiff satisfies her *prim a facie* case, the burden then shifts to the defendant employer to articulate a legitimate, non discriminatory reason for the challenged employment action. *Id.* The employer's burden, however, is merely one of production. *Id.* at 1528 (quoting *Burdine,* 450 U.S. at 254-55).

Once the employer articulates one or more legitimate, nondiscriminatory reasons, the presumption of discrimination vanishes and "the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Chapman,* 229 F.3d at 1024. Put another way, once the employer comes forward with a legitimate reason for the decision, the plaintiff must prove that the articulated reason is only a pretext for the prohibited discrimination.

In this Circuit, it is now firmly established that "a subjective reason can constitute a sufficient, legitimate, nondiscriminatory reason" for an employment action. *See Chapman*, 229 F.3d at 1033.

An employer's failure to follow an internal policy does not demonstrate pretext,

particularly in the absence of additional evidence that the procedures were followed with respect to non-protected employees. *See, e.g., Brown v. Honda American Motor Co., Inc.*, 939 F.2d 946, 951-52 (11th Cir. 1991).

Both the ADEA and Title VII require that the aggrieved person file a charge of discrimination within 180 days of the unlawful employment practice. A failure to promote is considered a discrete act of discrimination. *See National Railroad Passenger Corp. v. Morgan*, 122 S.Ct. 2061, 2071 (2002).

## Analysis

### A. The 1999 Promotions

The three promotion decisions that occurred in 1999 under the direction of decision-maker Poole did not occur within 180 days of Plaintiff's filing her EEOC charge. As Griffin filed her EEOC charge on November 16, 2000, she can only recover for promotion decisions made after May 19, 2000.

Plaintiff's claims based on the promotion of Ken Fretwell, in August 1999, and of Sherry Askew and Tiffany Winters in October, 1999, are therefore outside the 180 day period.

There is no evidentiary basis for Plaintiff's argument that the statute of limitations for her 1999 should be equitably tolled. Plaintiff knew when the promotion decisions were made, and she knew the decision-maker, Andy Poole. The 1999 promotion decisions are garden-variety, discrete failure-to-promote claims.

Plaintiff's argument that the AADEA saves her otherwise time-barred 1999 age claims is unpersuasive. It is indeed true that the AADEA lacks a specific statute of limitations; but that

statute provides:

> Any employment practice authorized by the Federal Age Discrimination in Employment Act shall also be authorized by this article and remedies, defenses, and *statutes of limitations*, under this article shall be the same as those authorized by the Federal Age Discrimination in Employment Act except that a plaintiff shall not be required to pursue any administrative action or remedy prior to filing suit under this article.

Ala. Code § 25-1-29 (emphasis added).

The plain meaning of that language is the 180-day time period embodied in the ADEA is incorporated into the AADEA. Otherwise, reference to "statutes of limitations" in AADEA would be meaningless.

Defendant is entitled to judgment as a matter of law on the 1999 promotion claims, based on Plaintiff's failure to timely file charges of discrimination with the EEOC.

### B. The 2000 Disparate Pay Claim

Plaintiff's claim predicated on the 2000 vacancy is really not that she was denied promotion opportunity, but that she was offered a promotion to a position with disparate pay. This claim is not time barred.

On the disparate pay claim Plaintiff has established her *prima facie* case.

Defendant's articulated reason for he disparate starting salaries is that the younger male selected for the position had substantial management experience, and that it values management experience for that position more highly than overall seniority with the Company.

There is no evidence tending to rebut the articulated reason. In fact, Plaintiff does lack substantial management experience. Nothing in the record shows that men or younger employees

with no management experience were offered higher starting salaries. In point of fact, the evidence shows just the opposite.

The only "evidence" offered by Plaintiff in rebuttal of the articulated reason is a comment by Andy Poole. Poole opined that Plaintiff should abandon her salary complaint because Heil, the decision-maker, would not giver the requested higher salary based solely on her gender. But it is undisputed that Poole was not involved in that decision-making process. Moreover, Poole's opinion was an opinion, an not an admissible fact sufficient to create a genuine dispute.

## II. Conclusions of Law

1. The undisputed facts show that Plaintiff's claims based on the 1999 promotions are time-barred.

2. The undisputed facts establish that Defendant's articulated reason for disparate pay involved in the 2000 claim is neither pretextual nor unworthy of credence.

3. As a matter of law, Defendant is entitled to judgment in its favor.

Summary Judgment shall be embodied in a separate Order dismissing the case.

Done this _31st_ day of January, 2003.

_____
Chief United States District Judge
U.W. Clemon